[S. F. No. 19767.   In Bank.   Jan. 28, 1958.]

JESUS VASQUEZ, Appellant, v. ROBERT ALAMEDA et al., Respondents.

Boccardo, Blum, Lull & Niland, Malcolm K. Campbell and Edward J. Niland for Appellant.

Hoge, Fenton & Jones, Lewis L. Fenton, Campbell, Custer, Warburton & Britton, Alfred B. Britton, Jr., W. R. Dunn, Low & Duryea and Remington Low for Respondents.

SCHAUER, J.—Plaintiff appeals from an adverse judgment entered pursuant to a jury's verdict in his action to recover for personal injuries suffered in a highway accident. We have concluded that plaintiff's claims of error in the jury instructions are immaterial and need not be discussed because the uncontradicted evidence overwhelmingly supports the jury's implied determination that plaintiff's own conduct at the least constituted negligence which proximately contributed to his injuries. Hence, no miscarriage of justice is shown and the judgment should be affirmed.

At about 1 o'clock on a March morning in 1954 plaintiff met one Vargas in a parking lot near the city of Santa Clara. On the parking lot was a Plymouth automobile owned by Vargas. The automobile was not in operable condition; its engine could not be started. Rain was falling at the time. Plaintiff, Vargas, and a third man joined in pushing the nonoperable automobile from its position of safety on the private property onto the highway, which at that point had three lanes, plus hard shoulders, and flat areas of dirt or gravel beyond the shoulders. The highway was straight for at least a half mile in each direction, and the posted speed limit was 45 miles an hour. The three men pushed the Plymouth, with its lights on, into the right hand, eastbound, lane of the highway where they allowed it to come to rest.

Plaintiff thereupon walked a short distance to the rear of the Plymouth and flagged down a car driven by defendant Greenley. Greenley stopped in the center lane, to the left of the Plymouth, and then started to back into the right hand lane behind the Plymouth in order to push it. While backing Greenley saw a truck driven by defendant Rutkowski coming from behind on the outer shoulder. Afraid that the truck was so wide it could not clear vehicles or objects in the right hand lane, Greenley stopped his car partly in the center lane and partly in the lane to the right. Rutkowski, who had seen the two cars occupying the right hand and center lanes, had decided to pass them on the shoulder. As he passed

the Plymouth he saw plaintiff standing behind it in the roadway to the right.

Defendant Alameda, driving in the same direction behind Rutkowski, saw red tail lights in the right hand lane ahead of him and other lights off to the right. He moved into the center lane to pass and did not see Greenley's car, partly in that lane, until it was too late to stop. He struck the side of Greenley's car, shoving it into the Plymouth, which was in turn moved forward by the impact. When Rutkowski heard the crash, he stopped his truck a short distance ahead of the Plymouth. Plaintiff testified that as he was standing on the shoulder next to the Plymouth after Greenley had started to back, he saw the lights of an approaching vehicle about 15 to 20 feet away in the right hand lane of the highway. The next thing he remembered was coming to his senses as he lay on his stomach with part of the left rear wheel of Rutkowski's truck pressing on his left side and shoulder.

As grounds for reversal plaintiff complains of various asserted errors of the court in instructing the jury, and urges in particular that the plaintiff's burden of proof was improperly and prejudicially overemphasized. However, the basic facts recited hereinabove make it altogether clear that plaintiff deliberately and actively participated in moving an inert object—Vargas' nonoperable automobile—from a place of safety on private property to a place of danger on the public highway where it obviously constituted an obstruction to traffic. Whether, as has been suggested, plaintiff thereby aided and abetted in creating a public nuisance (see Civ. Code, §§ 3479, 3480; Pen. Code, § 370) we need not determine because, on any reasonable view of the evidence, the implied finding of the jury that his conduct was a proximate contributing cause of the accident which barred recovery, is amply supported.

If his conduct be regarded as creating a nuisance plaintiff's liability to others for damages proximately caused by it would be, insofar as his own act is concerned, absolute (*Stockton Automobile Co.* v. *Confer* (1908), 154 Cal. 402, 405 [97 P. 881]; *Curtis* v. *Kastner* (1934), 220 Cal. 185, 188-191 [3, 4] [30 P.2d 26]; *Calder* v. *City & County of San Francisco* (1942), 50 Cal.App.2d 837, 839 [1] [123 P.2d 897]); i.e., anyone injured by plaintiff's unlawful act could, unless barred by such other's own contributory negligence, recover from plaintiff as from an insurer. It is, therefore, manifest that such plaintiff, if we take the view that he

participated in creating a nuisance, may not recover against anyone for injuries, to the causation of which the nuisance proximately contributed, even though a defendant's negligence may have also contributed proximately to the accident. The result, of course, must be the same if plaintiff's conduct be regarded as mere negligence which contributed proximately to cause the accident.

Considering the entire record we are satisfied that the jury's implied finding—that plaintiff was at the least guilty of negligence which contributed proximately to cause his injuries—is clearly and overwhelmingly supported. It follows that, even if we assume the errors urged by plaintiff, no miscarriage of justice is shown and a reversal is not permissible under the limitations of section 4½ of article VI of the California Constitution. (See *People* v. *Watson* (1956), 46 Cal.2d 818, 836 [299 P.2d 243] ; *Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.* (1915), 169 Cal. 545, 554 [147 P. 238].)

The judgment is affirmed.

Shenk, J., Spence, J., and McComb, J., concurred.

TRAYNOR, J.—I dissent on the ground that numerous seriously erroneous instructions operated to deny plaintiff a fair trial in a fact-context so complicated that the jury could have as plausibly found for plaintiff as against him. The pile-up of erroneous instructions matched the pile-up on the highway, and their total effect was bound to be prejudicial when the facts themselves invited so many possibilities of conjecture as to negligence and causation.

Even in fact situations less obscure than this one the court need not find that it was more probable than not that errors influenced the jury to deem them prejudicial. It must deem them prejudicial if it finds it not improbable that had they been absent another result would have been reached. Otherwise it would be declaring errors harmless in the face of a substantial chance that they were not, thereby depriving the appellant of the trial to which he was entitled. ''[T]he fact that there exists at least such an equal balance of reasonable probabilities [as to leave the court in serious doubt as to whether error influenced the jury] necessarily means that the court is of the opinion 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' '' (*People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243].)

678

Obviously we must assume that juries conscientiously heed instructions given them by the trial court. Were we to assume the contrary, appellate review of instructions would be meaningless, since no instructions could then be deemed prejudicial.

It also bears emphasis that except when the evidence compels only one conclusion, it is for the jury to determine the issues of negligence and causation. In ruling on the prejudicial effect of error, we do not determine how we would have decided these issues had the decision been ours. We do not hold error harmless merely because we would have reached the same conclusion as that reached by the jury, for we are not the triers of fact. Our task is to review the whole record and to determine in that context whether there was a substantial chance that error influenced the jury in reaching its verdict.

The determination of the majority that it is unnecessary to consider errors in the instructions on issues other than contributory negligence necessarily rests on the conclusion either that it is improbable that the jury decided the case on any issue other than contributory negligence, or that the evidence on that issue so overwhelmingly supported the result as to make any other result improbable.

I find neither of these conclusions tenable. There was substantial evidence to support a verdict for plaintiff on other issues. On the issue of contributory negligence, the jury could reasonably have concluded that plaintiff was not contributively negligent. It is therefore impossible to determine whether the jury reached a verdict based solely on that issue or whether it followed erroneous instructions on the issues of negligence and causation. Where the uncertainty surrounding the result looms so large, errors perforce also loom large. Any one of them might have influenced the jury in reaching a verdict that cannot be clearly related to any single issue, whether of contributory negligence, negligence, or causation.

To begin with contributory negligence, how can we be sure that a jury has found anything unreasonable in the conduct of pushing a disabled vehicle on a highway to start it when the traffic is light, the road straight, and the visibilty good enough to reveal lights of all the vehicles involved? To push a car along a highway, even at night, does not constitute negligence as a matter of law (*Shannon* v. *Thomas,* 57 Cal.App.2d 187, 194-195 [134 P.2d 522]; *Wright* v. *Ponitz,* 44 Cal.App.2d 215, 220 [112 P.2d 25]), and the jury and the trial court, in

the first and second of the foregoing cases respectively, determined that such conduct is not negligence.[1]  A comparable determination in this case would be at least a reasonable probability, not a mere possibility.

This probability is not diminished by the possible inference that plaintiff aided and abetted Vargas in violating section 582 of the Vehicle Code.  Although we can only conjecture, it is reasonable to assume that the jury was concerned with the total conduct of plaintiff, not simply with the isolated act of stopping the car.  It is questionable that it created greater hazard when stopped than when pushed.  Nothing in the evidence would compel a jury to infer that plaintiff aided and abetted Vargas in violating the statute.  While at the wheel of his own car, Vargas directed where it should go.  Plaintiff was only pushing, and when the car stopped, the other man who had also been pushing went back to the restaurant. Plaintiff could not remove the car from the highway without Vargas's cooperation.  The burden of proof on contributory negligence was on defendants; yet they made no effort to establish that plaintiff and Vargas planned to stop or leave the car on the highway if they could not get it started or that Vargas wanted plaintiff to assist him in moving his car onto the shoulder or was willing that he should do so.  The jury could thus reasonably conclude that defendants did not sustain their burden of proving that plaintiff violated section 582, and that plaintiff had no alternative to acquiescing in Vargas's decision to stop the car on the highway to await additional help.  We cannot ignore this probability.

We are then bound to consider whether error was prejudicial in the instructions on the other issues of negligence and causation on which the verdict could turn.  The evidence was sufficient to support findings against Greenley, Rutkowski, and

---

[1]These cases also make clear that the nonnegligent use of the highway to start a car by pushing it does not constitute the creation or maintenance of a public nuisance.  Penal Code section 370 provides that ''Anything which . . . unlawfully obstructs the free passage or use . . . of . . . any . . . highway, is a public nuisance.'' (See also Civ. Code §§ 3479, 3480.) The key word in this definition is, of course, the word ''unlawfully.'' Neither the Shannon nor Wright cases expressly referred to nuisance, but there is no magic in that word. Since contributory negligence was not found in those cases, the conduct involved was necessarily found to be a reasonable and therefore lawful use of the highway. As the court in the Shannon case pointed out, ''It certainly cannot be said as a matter of law that the conduct of an automobile driver in pushing his vehicle along the highway and toward the right-hand curb in an effort to start it when his battery failed is not a *legitimate and prudent* use of the highway.'' (57 Cal.App.2d at 195, italics added.)

Alameda on the issues of negligence and proximate cause. It was for the jury to determine whether Greenley was negligent in stopping alongside Vargas's car, thereby blocking both lanes available for eastbound traffic, or in attempting to back into the right lane in the face of the oncoming truck. In any event, plaintiff had no reason to foresee that Greenley might be negligent in the aid he rendered. "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." (Cardozo, J. in *Glanzer* v. *Shepard*, 233 N.Y. 236, 239 [135 N.E. 275, 23 A.L.R. 1425]; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 384 [240 P.2d 580]; *Perry* v. *D. J. & T. Sullivan, Inc.*, 219 Cal. 384, 390 [26 P.2d 485]; *Janofsky* v. *Garland*, 42 Cal.App.2d 655, 657 [109 P.2d 750].) Whether Rutkowski should have passed on the shoulder and whether Alameda should have seen Greenley's car before it was too late to stop were also questions for the jury. As to the cause of plaintiff's injuries, the jury could reasonably have concluded that plaintiff had been hit by Rutkowski's truck, thrown against or under it by the collision of the other vehicles, or injured by a combination of circumstances.

The trial court gave the following instruction on assumption of risk:

"One is said to assume a risk when he freely, voluntarily and knowingly manifests his assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains within the area of danger.

"One who thus assumed a risk is not entitled to recover for damage caused him without intention and which resulted from the dangerous condition or conduct to which he thus exposed himself.

"Distinction should be noted between the assumption of risk just described, which bars recovery, and the ordinary and necessary acceptance of common risks such as surround us all and that lie in the possibility that other persons will not perform their duties toward us. As to this latter kind of everyday risk, one will not be barred from recovery for damage by the fact, if it be a fact, that while he, himself, is exercising ordinary care, and when there is nothing in the circumstances that either cautions him, or would caution a

reasonably prudent person in like position, to the contrary, he assumes that others will perform their duties toward him and acts on that assumption.''

The last sentence of this instruction confuses the defenses of contributory negligence and assumption of risk. It erroneously suggests that if in the exercise of due care the plaintiff would have known of the danger of the defendant's negligence, he has assumed the risk of such conduct. ''The defenses of assumption of risk and contributory negligence are based on different theories. Contributory negligence arises from a lack of due care. The defense of assumption of risk, on the other hand, will negative liability regardless of the fact that plaintiff may have acted with due care. [Citation.] It is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. [Citation.] Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of risk, but where it merely appears that he should or could have discovered the danger by the exercise of ordinary care, the defense is contributory negligence and not assumption of risk.'' (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904].)

Moreover, an instruction on assumption of risk would not be proper in any event, for in the circumstances of the case, the defense was not available to defendants. ''While a person, if fully informed, may assume the risk even though the dangerous condition is caused by the negligence of others (*Prescott* v. *Ralphs Grocery Co.*, *supra*, 42 Cal.2d 158, 162), 'The plaintiff does not assume the risk of any negligence which he has no reason to anticipate, but once he is fully informed of it, it is well settled that the risks arising from such negligence may be assumed.' (Prosser on Torts, p. 385.)'' (*Rogers* v. *Los Angeles Transit Lines*, 45 Cal.2d 414, 419 [289 P.2d 226].) Plaintiff may have been aware of hazards that would attend any attempt to start the car by pushing it onto the highway, and he may have been negligent in exposing himself to these hazards. There is no evidence, however, that he knew or must have known of the danger of negligent driving on the part of defendants, and that he thereby assumed the risks created by such conduct.

Plaintiff's most serious objections go to the trial court's instructions on causation. He contends that the trial court

erred in instructing the jury on burden of proof by over-emphasizing the burden on him and by refusing to instruct adequately on the doctrine of *Summers* v. *Tice*, 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]. In that case two defendants negligently discharged shotguns in the direction of the plaintiff, who was injured by a shot from one of the guns. He could not determine from which gun the shot came. We held that it was not reasonable under these circumstances to require plaintiff to show the cause of his injury. The burden fell on each defendant to show that his negligence had not caused it. If neither defendant could show that he had not caused the injury, both were liable.

The rule of *Summers* v. *Tice* applies to the facts of the present case. The jury could have found that defendants Greenley, Rutkowski, and Alameda were all negligent, or that any one of them was negligent. It might well have been unable to determine, however, which defendant's negligence caused plaintiff's injuries. They might have been caused by Rutkowski's negligently running into him, or by the collision between the vehicles of Greenley and Alameda. As in the Summers case, plaintiff could not identify the cause of his injuries.

The trial court gave the following instruction:

"When two or more persons by their acts are possibly the sole cause of a harm, and the plaintiff has introduced evidence that one of the two or more persons is culpable, then the defendant has the burden of proving that the other person or persons were the sole cause of the harm.

"The real reason for the rule that each joint tort feasor is responsible for the whole damage is the practical unfairness of denying the injured person redress simply because he cannot prove how much damage each did, when it is certain that between them they did all; let them be the one to apportion it among themselves. Since, then, the difficulty of proof is the reason, the rule should apply whenever the harm has plural causes, and not merely when they acted in conscious concert."[2]

Other instructions, however, foreclosed the application of

---

[2] It should be noted that this instruction erroneously suggests that when one of several defendants is known to have caused the plaintiff's injury, but it cannot be determined which, the burden of proof on the issue of causation is on all the defendants whether or not their negligence has been established. The Summers rule is based on the policy that it is preferable to hold liable a negligent defendant who did not in fact cause the injury than to deny an innocent plaintiff any remedy when it cannot be determined which of the defendants is responsible for the harm

the Summers rule. The trial court repeatedly instructed the jury on plaintiff's burden of proof and categorically stated that if the conflicting probabilities are equal or the evidence is equally balanced on the issue of negligence or proximate cause, plaintiff failed to fulfill his burden of proof. These instructions served to nullify the single instruction on the rule of the Summers case. There is no merit in defendants' contention that plaintiff invited the error by offering instructions, which were refused, similar to those offered by defendants. Plaintiff's refused instructions on burden of proof were not phrased in categorical terms, and their apt reference to the other instructions would have enabled the jury to interpret them as subject to the Summers exception.

The trial court also erred in giving the following instruction on intervening cause:

"As you have been instructed, one of the questions we must decide in finding whether or not one person is liable for injury to another, is whether or not the conduct in question was a proximate cause of the injury in question. This inquiry may involve the conduct of two or more persons acting independently and at different times. To explain the problem presented by such a situation, I shall refer to the person whose conduct came first in point of time as the first actor and to the other person as the second actor. If the first actor foresaw, or by exercising ordinary care would have seen, that a second actor probably would conduct himself as the second actor actually did, and also that the combination of the first actor's conduct and the second actor's conduct probably would cause injury to a third person, and if the combined conduct did so result, then each actor's conduct was a concurring proximate cause of the injury—although, of course, neither would be liable unless his conduct was negligent. But if the first actor's conduct alone did not cause the injury, and if a combination of results such as I have mentioned was not foreseen by him as a probability, and was not so foreseeable in the exercise of ordinary care, then the first actor may not be held liable for any injury of which the second actor's conduct was a proximate cause or which may now appear to have resulted from the combined conduct of both." (Substantially identical with BAJI, 4th ed., No. 104-C.2.)

---

but it appears that one of them was. This policy obviously compels the plaintiff first to show that a defendant who may have caused the injury was negligent, and this instruction failed to make this clear. The error bears noting even though it could not have prejudiced plaintiff in this case.

684

This instruction is riddled with error. It begins innocently enough to speak of the foreseeability of conduct that may combine with antecedent negligence to produce injury. It then lurches violently into what the actors actually did, thus stating the erroneous rule that the identical consequences must have been foreseeable as a probability. (*Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 425 [218 P.2d 43].) Nor is the concept of probability rescued from limbo by definition. The jury could infer from the instruction that the injury must be foreseeable as more probable than not or that there must be at least a substantial chance of injury. It may be negligence, however, to create the risk of even a slight possibility of injury if a reasonably prudent man would not do so. One may be negligent in not looking before crossing a railroad track even though trains are infrequent. The rule extends to foreseeable risks arising out of possible intervening conduct of third persons. Thus, in the present case, if Greenley was negligent in blocking the highway, it would be because a reasonably prudent man would foresee the risk of injury from the intervening conduct of other motorists. The occurrence of injury from intervening conduct that should have been foreseen, whether as a probability or as a possibility, would not insulate Greenley from liability. (*McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 299 [195 P.2d 783]; see Restatement, Torts, § 449.)

The instruction, however, could lead the jury to suppose that the conduct of Rutkowski or Alameda served to relieve Greenley of any liability for placing his car partially across two lanes of the highway even if they found he was negligent in so doing. The jury may have concluded that a reasonably prudent man would not have incurred the risks that Greenley incurred on the ground that the possibility of harm from the intervening conduct of other motorists, even though unlikely, should have been avoided. They may also have concluded, however, that it was unlikely that Rutkowski and Alameda would act as they did and absolved Greenley of liability for negligence solely because the conduct of Rutkowski or Alameda or both was also a cause of plaintiff's injury. Under these circumstances an instruction on intervening cause had no place in the case. Greenley was either negligent in failing to anticipate and guard against the conduct of other motorists or he was not. If he was, the occurrence of that conduct, even if improbable, would not defeat liability, and by inviting the jury to find otherwise, the in-

struction gave Greenley the benefit of a defense to which he was not entitled.

It is also contended that it was error to give an instruction on unavoidable accident. That question is pending in another case, and it is not necessary to consider it here in view of the errors that have already been discussed.

There was enough evidence in the present case to support a verdict for plaintiff. There is no way of knowing whether the verdict was based on a finding that his own negligence contributed to his injuries, on findings that none of the defendants were negligent, on findings that plaintiff had not established that the negligence of any defendant caused his injury, or, in the case of Greenley, on a finding that the conduct of Rutkowski or Alameda or both prevented Greenley's negligence from being a proximate cause of the injury. The error in giving repeated instructions on plaintiff's burden of proof that foreclosed the application of the rule of *Summers* v. *Tice, supra,* coupled with the fact that there was no direct evidence as to how plaintiff was injured, could have led to erroneous findings that plaintiff had not sustained his burden of proof on the issue of causation. The instruction permitting the jury to find for Greenley on the defense of intervening cause, although there was no evidence to support this defense, coupled with the fact that the instruction erroneously suggested to the jury that the issue should be resolved in Greenley's favor, could also have led to the verdict in his favor. Accordingly, it is impossible to determine whether the verdict was based on correct instructions on the issues of negligence and contributory negligence, on erroneous instructions on the burden of proof on causation or, in the case of Greenley, on the erroneous determination of a question of law improperly left to the jury. Under these circumstances it has heretofore been settled that the error is prejudicial. (*Miller* v. *Peters,* 37 Cal.2d 89, 95 [230 P.2d 803]; *Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 644 [220 P.2d 897]; *Edwards* v. *Freeman,* 34 Cal.2d 589, 594 [212 P.2d 883]; *Huebotter* v. *Follett,* 27 Cal.2d 765, 770-771 [167 P.2d 193]; *Oettinger* v. *Stewart,* 24 Cal.2d 133, 140 [148 P.2d 19, 156 A.L.R. 1221].)

I would reverse the judgment.

Gibson, C. J., and Carter, J., concurred.

Appellant's petition for a rehearing was denied February 26, 1958. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.