[Civ. No. 27735. Second Dist., Div. Three. Sept. 23, 1965.]

GARY LEE EWART, a Minor, etc., et al., Plaintiffs and
Appellants, v. SOUTHERN CALIFORNIA GAS COM-
PANY et al., Defendants and Respondents.

164

Magana, Olney, Levy, Cathcart & Gelfand, Ira J. McDonald, and Ellis J. Horvitz for Plaintiffs and Appellants.

Overton, Lyman & Prince, Fred S. Lack, Jr., James D. Garibaldi, Warren J. Lane and Abe Mutchnik for Defendants and Respondents.

KAUS, J.—Action for the alleged wrongful death of LeRoy Eugene Ewart, who died of carbon monoxide poisoning while working inside a 30-inch water pipeline which his employer, Macco Corporation ("Macco"), was then constructing under contract between it and the City of Long Beach.

Defendants are Southern California Gas Company ("Gas Company") and Emsco Concrete Cutting Company ("Emsco").

This appeal is from a judgment entered following a jury trial which resulted in a verdict in favor of both defendants.

For obvious reasons Ewart's employer, Macco, was not joined as a defendant, but as will appear its conduct was most material to the issues before the trial court and on appeal.

Although the evidence before the jury was lengthy, complicated, technical and by no means conclusive on any of the factual issues involved, a brief outline will suffice for a meaningful discussion of the alleged errors below.

█ The work on the waterline in question started in October 1959. The water pipe was to be laid in a ditch which varied in depth from 6 to 19 feet. After the pipe was laid in the ditch, it was backfilled and the backfill watered in order to obtain compaction. Thereafter, the backfill was further compacted by a caterpillar tractor and finally by a "stomper", an air operated steel shoe, about 16 by 16 inches, which could strike with power equivalent to a blow of 3 to 4 tons, a force similar to a dropping of a 5-ton ball from a height of 3 feet. It could also be operated so gently as to crack walnuts and have something edible left over.

After the compaction operation was completed, a temporary asphalt paving was placed over the area of the ditch.

The ditch crossed various subsurface utility lines, including those owned and maintained by the Gas Company. To avoid damage to its lines, the Gas Company maintained a full time employee at the construction site for the purpose of locating and identifying all gas lines and a company supervisor visited the site daily. The Gas Company recognized that its purpose in identifying the gas lines was not only to protect its property, but also to safeguard members of the public, including workmen.

At intervals manholes were constructed along the water pipe which, when completed, were covered with asphalt paving. They were not airtight and it was possible for a gas

which accumulated underneath the asphalt paving but could not penetrate it, to enter the water pipe through the manholes.

The stomping operation was, in part, sub-contracted by the defendant Emsco. There is evidence that on October 30, 1959, Emsco's operator damaged a three-quarter-inch service connection of the Gas Company which crossed the backfill being compacted at a depth of about 4 feet below the surface. Although the evidence on this point is by no means compelling, we hold that the trial court was correct in submitting the issue of Emsco's negligence to the jury as a question of fact.

The leak was not discovered until December 8 when gas bubbles were seen in puddles of water which had formed in the paving above the former excavation. When a Gas Company repair crew excavated to discover the leak, the gas escaped with such pressure as to create a dust cloud. The leak was promptly repaired, but the Gas Company estimated that between the time of the break on October 30 and the discovery of the leak, about 800,000 cubic feet of gas had escaped.

There is substantial evidence that after the discovery of the leak the Gas Company acted negligently: although Macco was promptly notified of the leak, no information was given to it concerning the large quantity of gas which had escaped. The Gas Company performed certain tests to determine whether any other of its lines were damaged, but no attempt was made to determine what had happened to the 800,000 cubic feet of gas which had escaped, such an investigation not being the Gas Company's routine; in particular, no tests were made in the water main, the construction of which was by then nearly completed.

The gas which had escaped was methane, which is by nature odorless. Although the Gas Company adds an odorant before the gas is distributed to the public, this odorant can be filtered out if the gas passes through earth. Methane is lighter than air and will normally rise, but it will follow the path of least resistance. The record contains evidence from which it is inferable that the gas, prevented by the asphalt paving from escaping upward, spread through the backfilled construction ditch to the manholes and entered the water pipe in that fashion.

On December 17, 1959, deceased and the son of Macco's foreman were cleaning the inside of the water pipeline. They

were last seen alive after they had emerged for lunch and signified their intention of continuing the cleaning operation in the afternoon. At about 12:30 p.m. a manhole cover moved and a pillar of smoke erupted from the manhole. At about 3:30 p.m. another Macco employee fainted inside of the pipe. A search for decedent and the foreman's son was then started. Other manholes were uncovered and a large ball of fire, following an explosion, came out of one of these manholes. Eventually decedent's body was found inside the pipe.

There was expert testimony that when methane gas explodes, the explosion generates carbon monoxide. As stated, deceased died of carbon monoxide poisoning.

The record contains considerable evidence that Macco did not provide its employees a safe place to work and was negligent in other particulars. Without going into details, there was evidence of the following: 1. Macco permitted its men to smoke inside of the pipe even after it was aware of the leak. 2. Macco made no tests to determine the presence of gas. 3. Macco published no safety regulations. 4. Macco held no safety meetings. 5. Macco's employees were not instructed concerning precautions on the job; in particular no instructions against lighting matches were given. 6. No blowers were installed to ventilate the pipe.

The attack on the judgment is concentrated on two instructions on proximate cause and a series of instructions based upon a number of violations of construction safety orders by Macco.

■■ The two instructions on proximate cause were BAJI 104-C (Revised),[1] given at the request of Emsco and BAJI 104-C.2[2] requested by the Gas Company.

We believe that both instructions are erroneous and under the circumstances of this case prejudicially so.

---

[1]"Where a defendant is negligent but the immediate cause of injury to the plaintiff is the conduct of a third person, said defendant is not liable for such injury unless such intervening conduct is something which he foresaw or in the exercise of reasonable care should have foreseen would, cooperating with a condition created by defendant's own negligence, probably result in injury to another. The reason for this is that if defendant foresaw or in the exercise of ordinary care should have foreseen said result his negligence continued and operated as a proximate concurring cause of the injury."

[2]"As you have been instructed, one of the questions we must decide in finding whether or not one person is liable for injury to another, is whether or not the conduct in question was a proximate cause of the injury in question. This inquiry may involve the conduct of two or more persons acting independently and at different times. To explain the problem presented by such a situation, I shall refer to the person whose

The problem involved centers around the question of when the intervening act of a third person becomes a superseding cause of harm which would not have been suffered but for defendant's negligent conduct. The parties have briefed the case as if it involved only the problem of intervening *negligent* acts of third persons. The two quoted instructions, however, do not assume that the "third person" of BAJI 104-C (Revised) or the "second actor" of BAJI 104-C.2 is negligent, at least as far as the determination of the "first actor's" liability is concerned. Since Macco's conduct was obviously negligent, it seems proper to discuss the case on the basis argued, but it should be noted that nonculpable intervening conduct of a third person is even less likely to become a superseding cause than negligent or criminal conduct. (*Katz* v. *Helbing*, 205 Cal. 629, 634 [271 P. 1062, 62 A.L.R. 825]; Rest., Torts, § 442 (e), (f).)

It is worth noting, perhaps, that one does not reach the issue of superseding cause until one is satisfied that the record supports a finding of negligence on the part of the defendant and a further finding that but for such negligence the accident would not have occurred. This, at least, has been the approach of our Supreme Court. (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872].) As the concurring opinion in that case argues, such an approach may be analytically wrong, because a finding that plaintiff's harm was due to a superseding cause, is, in reality, a finding that the cause which injured the plaintiff was not a part of the risk created by the defendant. The original Restatement of Torts has been criticized for first adopting Justice Cardozo's theory of risk in section 281 and then discussing various "superseding causes," which are, in truth illusory, in that the superseding causes in reality simply are not part

conduct came first in point of time as the first actor and to the other person as the second actor.

"If the first actor foresaw, or by exercising ordinary care would have seen, that a second actor probably would conduct himself as the second actor actually did, ''and also that the combination of the first actor's conduct and the second actor's conduct probably would proximately cause injury to a third person, and if the combined conduct did so result, then each actor's conduct was a concurring proximate cause of that injury—although, of course, neither would be liable unless his conduct was negligent.

"But if the first actor's conduct alone did not cause the injury, and if a combination of results such as I have mentioned was not foreseen by him as a probability, and was not so foreseeable in the exercise of ordinary care, then the first actor may not be held liable for any injury of which the second actor's conduct was a proximate cause or which now may appear to have resulted from the combined conduct of both.''

of the undue risk created by the defendant. (Seavey, *Mr. Justice Cardozo and the Law of Torts*, 25 Harv.L.Rev. 372, 390, 391.) The criticism was recognized by the authors of Restatement Second of Torts, section 281, comment (h), but the old form was retained because "in the past the court's generally have discussed the effect of intervening forces in terms of causation." We note that the method of analysis of the legal problem presented by *Richards* v. *Stanley*, 43 Cal.2d 60 [271 P.2d 23] appears to be that of the concurring opinion in *Mosley*, rather than of the majority.

We are satisfied that the present record is ample to support findings on the issues of negligence and "cause in fact," both against the Gas Company and against Emsco. ▆ We are also satisfied that generally persons working underground in an area into which the escaping gas might seep were within the ambit of the unreasonable risk which made the conduct of Emsco and the Gas Company negligent. (*Palsgraf* v. *Long Island R.R. Co.*, 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253]; cf. *Tucker* v. *Lombardo*, 47 Cal. 2d 457, 465 [303 P.2d 1041].)

It is also clear that the record supports an inference that the gas which exploded on December 17 was part of the gas which had escaped between October 30 and December 8. Whether or not the record justifies a contrary inference is beside the point.

▆ The problem of intervening negligent conduct has, of course, been considered in a number of California decisions. It would be idle to pretend that all cases are easily reconcilable, but we take it as settled in California today that the principles of causation of the Restatement of Torts, at least as they relate to intervening and superseding causes, have been declared to be the law of this state in a number of decisions of our Supreme Court. (*Stewart* v. *Cox*, 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345]; *Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 319 [282 P.2d 12]; *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783]; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872]; *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631, 637-638 [67 P.2d 678].) In *Stewart* v. *Cox, supra,* the Supreme Court said: "The rules set forth in sections 442-453 of the Restatement of Torts for determining whether an intervening act of a third person constitutes a superseding cause which prevents antecedent negligence of the defendant from being a proximate cause of the harm complained of have been accepted in California.

(See, for example, *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783]; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872].) Under these rules the fact that an intervening act of a third person is done in a negligent manner does not make it a superseding cause if a reasonable man knowing the situation existing when the act of the third person is done would not regard it as highly extraordinary that the third person so acted or the act is a normal response to a situation created by the defendant's conduct and the manner in which the intervening act is done is not extraordinarily negligent. (See Rest., Torts, § 447; *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631, 637 [67 P.2d 678].) ▆ The fact that a third person does not perform his duty to protect the plaintiff from harm either because he makes no effort or through his negligence does not succeed, is not a superseding cause. (Rest., Torts, § 452.)'' (*Ibid.*, pp. 863-864.)

▆ The key section of the Restatement pertinent to the problem before us is section 447 reading as follows: ''The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.''

▆ The form in which this section is couched is negative, that is to say it sets forth three situations in which intervening negligent conduct does not become a superseding cause. As we read the instructions given by the trial court herein, they only recognize the first of the three situations and that one only partially. They ignore the second and the third.[3]

It is easier to illustrate what we mean by discussing BAJI 104-C (Revised), because linguistically it is much the clearer

[3]Inasmuch as there is no evidence that the conduct of Macco was a normal response to the situation created by the Gas Company and Emsco or that the conduct of the Gas Company was a normal response to the situation created by Emsco, no error can be predicated on the omission to instruct in accordance with section 447(c) of the Restatement of Torts.

of the two instructions. It tells the jury in reasonably clear language that if the immediate cause of injury is the conduct of a third person, defendant is not liable unless he foresaw or should have foreseen that such conduct of a third person would in cooperation with a condition caused by defendant's own negligence, *probably* result in injury to another. This foreclosed the jury from finding the defendant liable in the situation set forth in section 447(b) of the Restatement of Torts, that is to say if ''a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted.'' Another error in BAJI 104-C (Revised) is that it states, in effect, that in order to remain liable the negligence of the third person must be foreseeable as a probability. This error was exposed by the present Chief Justice in his dissenting opinion in *Vasquez* v. *Alameda*, 49 Cal.2d 674, 684 [321 P.2d 1]: ''The jury could infer from the instruction that the injury must be foreseeable as more probable than not or that there must be at least a substantial chance of injury. It may be negligence, however, to create the risk of a slight possibility of injury if a reasonably prudent man would not do so. One may be negligent in not looking before crossing a railroad track even though trains are infrequent. The rule extends to foreseeable risks arising out of possible intervening conduct of third persons.''[4]

The test is not whether injury is to be foreseen as a probability or as a possibility, but whether a reasonably prudent person would, under particular circumstances, subject others to a particular risk. The fact that injury to others is not probable does not relieve one of liability if the risk is unreasonable, when the utility of the conduct is compared with the magnitude of the risk. ''If the actor reasonably can accomplish the same result by other conduct which involves less opportunity for harm to others, the risk incurred by the manner of doing business which resulted in injury is clearly unreasonable.'' *Crane* v. *Smith*, 23 Cal.2d 288, 299 [144 P.2d 356]. (See also Rest., Torts, § 291.)

It is obvious that plaintiffs were seriously damaged by the instruction in question. The jury may have felt that it was not foreseeable as a probability that Macco would be as callously indifferent to the safety of its employees in the pipe as the evidence justified it in finding. On the other hand if the

---

[4]The majority opinion in *Vasquez* v. *Alameda* did not deal with the issue discussed by Justice Traynor in the portion of his dissent quoted above.

jury had been permitted to apply both applicable tests of the Restatement, that is to say, foreseeability of the intervening negligence (Rest., Torts, § 447(a)) and the test of section 447(b), namely whether a reasonable man knowing the situation existing when the act of the third person was done would regard it as highly extraordinary that the third person had so acted, a different result might well have been reached.

BAJI 104-C.2 repeats the error of BAJI 104-C. (Revised.)[5] It consists of three paragraphs. The first is harmless; it merely sets the stage for the two that follow. The second paragraph is perhaps not erroneous as such, because standing alone it merely tells the jury that the ''first actor'' remains liable if he foresaw, or should have foreseen as a probability, that the ''second actor'' would conduct himself as he did and that the combined result of the ''first actor's'' conduct would probably cause injury. That is, of course, true enough and does not expressly negative the possibility that the ''first actor'' may also be liable if the negligence of the ''second actor'' was not foreseeable as a probability or at all.[6] Whether or not there is an implication to that effect, however, is immaterial because we believe that the third paragraph of the instruction, juxtaposed to the second, can only be read as negativing liability on the part of the ''first actor,'' unless the conditions stated in the second paragraph apply. True, there is a certain ambiguity in the phrase ''if a combination of results such as I have mentioned was not foreseen by him as a probability,'' but it is difficult, con-

[5]In point of fact BAJI 104-C.2 was read to the jury before BAJI 104-C (Revised). We think the order in which the two instructions were given is immaterial. They both contain the same error.

[6]There are statements in several recent opinions of our Supreme Court which conceivably may mislead a casual reader into a belief that California still requires foreseeability of intervening negligent conduct as a predicate to legal causation. Thus in *Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 319 [282 P.2d 12], the Supreme Court quoted section 447(a) of the Restatement and then said: ''It has been held that this rule is applicable in California.'' The point of the applicability of section 447(b) was not involved in the case because the court found a sufficient basis for reversing a nonsuit in section 477(a). The same is true of *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 299 [195 P.2d 783]. In *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872], a judgment in favor of plaintiff was upheld by the application of the even narrower test of section 449 which states, in effect, that if the realizable likelihood of the conduct of a third person is what makes the defendant negligent in the first place, it will not break the chain of causation. The fact that it was unnecessary in any of these cases to resort to section 447(b) does not mean judicial disapproval thereof. In any event, *Stewart* v. *Cox*, 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345], expressly adopts all of section 447.

ceptually, to think of "combination of results" as referring to anything but the conduct of the "second actor" and the injury resulting from it.

The vice of both instructions, of course, is that they cast an undue burden on the plaintiff. Here the jury was quite properly instructed that the plaintiff had the burden of proving that the negligence of either defendant was a proxi-mate cause of the death of Ewart. Applying this charge to the two erroneous instructions it meant that once the jury had found that the immediate cause of the death was the conduct of Macco (BAJI 104-C (Revised),) or that the combined result of the negligence of a defendant and Macco caused the death (BAJI 104-C.2) then plaintiff had to prove as a probability that the conduct of Macco was foreseeable.[7]

The rule that intervening negligent conduct does not break the causal chain even though it is not foreseeable, as stated in section 447 of the Restatement of Torts, is actually nothing but an application of the more general rule laid down in section 435 of the Restatement, that the fact that a defendant neither foresaw or should have foreseen the extent of the harm or the manner in which it occurred, does not prevent him from being liable. This was pointed out by this court in *Gibson* v. *Garcia*, 96 Cal.2d 681, 685 [216 P.2d 119].[8] It reiterated this holding in *Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418 [218 P.2d 43], where it specifically held that BAJI 104-C.2—then numbered 104-C—was erroneous because "It would have told the jury that negligence of [defendant] was not a proximate cause unless she did foresee, or by the exercise of ordinary care should have foreseen, the identical consequence that happened." (*Ibid.*, p. 425.) As already indicated, Justice Traynor took the same position in *Vasquez* v. *Alameda*, 49 Cal.2d 674, 684 [321 P.2d 1], although, of course, in a dissent.

 We have no doubt that there are cases where the errors discussed are harmless, but we cannot say so here.

The court instructed the jury on a series of violations of certain industrial safety orders.[9] (*Porter* v. *Montgomery*

---

[7]The parties have argued the case as if the instructions in question related merely to the intervening conduct of Macco. We have already indicated that as far as the defendant Emsco is concerned, it could point to intervening negligence of the Gas Company as well as of Macco. (See fn. 3.)

[8]*Gibson* v. *Garcia, supra,* is the basis of illustration 3 to section 422(b) of the Restatement Second of Torts, (1965).

[9]Since the parties have not argued the problem discussed in this footnote, we merely mention it so that it may be intelligently briefed at the

*Ward & Co.*, 48 Cal.2d 846, 850 [313 P.2d 854]; *DiMuro* v. *Masterson Trusafe Steel Scaffold Co.*, 193 Cal.App.2d 784, 795-796 [14 Cal.Rptr. 551]; *Longway* v. *McCall*, 181 Cal. App.2d 723, 727 [5 Cal.Rptr. 818].)

In this fashion the jury was advised by the court that Macco's multifarious omissions were not only below the standard of a fictitious reasonable man, but violative of a standard of conduct formulated by a governmental body with authority to do so. (*Porter* v. *Montgomery Ward Co., supra*; *Clinkscales* v. *Carver*, 22 Cal.2d 72, 75 [136 P.2d 777].)

This judicial enumeration of Macco's sins merely emphasized the erroneous instructions on the issue of causation. As violation was piled on violation—the court instructed on about twenty of them— the foreseeability of Macco's conduct as a probability diminished to the vanishing point.

The judgment is reversed.

Ford, J., concurred.

ASHBURN, J.,* Dissenting.—I am unable to concur in the majority opinion.

This is a third party action for damages for wrongful

---

retrial and a second appeal averted: Certain of the industrial safety orders read to the jury appear to us so vague and general in their command that it is difficult to see how a jury could find that their violation was a cause of a particular accident. Thus, for example, one order simply reads as follows: ''Every employer shall inaugurate and maintain an accident prevention program. Such program *may* make use of committees, group safety meetings or instructions from management to workers.'' The order says nothing about the agenda at the meetings or the contents of instructions from management to workers. To find that a violation of such an order is a cause of a particular accident would require the jury to determine initially what should have been discussed at safety meetings or what instructions should have been passed down to the workers. The same order is more specific if an employer has 20 or more employees at a project, but it still requires such things as ''safety education among employees and encouragement of safety suggestions from them.'' The last two paragraphs of this order require the adoption of a Safe Practice Code and its ''availability'' on every job site. The industrial safety orders contain a *suggested* Safe Practice Code. Certain paragraphs thereof were read to the jury and again we find vague generalities such as: ''All employees shall be given frequent accident prevention instructions. Instructions should be given at least once a month.'' The problem of causation, when the alleged negligent conduct consists of a failure to protect, rather than an affirmative act, is usually most troublesome and much leeway must be given to the common sense of the jury. See Prosser, *Proximate Cause in California* (1950) 38 California Law Review, 369, 382. Whether too much latitude is involved here, we need not decide today.

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

death of Leroy Eugene Ewart who was asphyxiated while working inside a water pipeline that was being installed for the City of Long Beach under contract between the city and Macco Corporation, which was Mr. Ewart's employer. The asphyxiation was probably due to the presence of gas which had escaped from a broken pipeline of defendant Gas Company.

Ewart's heirs sued Southern California Gas Company and Emsco Concrete Cutting Company of Los Angeles alleging negligence on the part of both. Emsco was a subcontractor under Macco. For obvious reasons Macco Corporation was not joined as a defendant; the accident occurred while Ewart was acting within the course and scope of his employment and hence the sole remedy of the heirs against Macco was a proceeding for an award under the Workmen's Compensation Act. *Scott* v. *Industrial Acc. Com.*, 46 Cal.2d 76, 93 [293 P.2d 18] ; Lab. Code, §§ 3601, 3852.) A jury found in favor of both defendants and plaintiffs appeal.

Their counsel present two points in this court: (1) that there was sufficient evidence to support a verdict against each defendant had one been rendered (not that the evidence is insufficient to sustain the verdict), and (2) that there was prejudicial error in the giving of certain instructions requested by defendant Gas Company upon the subject of intervening or superseding causes. If the latter contention be not sustainable there is no occasion to consider the former.

Concerning the matter of superseding causes *Stewart* v. *Cox,* 55 Cal.2d 857, 863, 864 [13 Cal.Rptr. 521, 362 P.2d 345], says: "The rules set forth in sections 442-453 of the Restatement of Torts for determining whether an intervening act of a third person constitutes a superseding cause which prevents antecedent negligence of the defendant from being a proximate cause of the harm complained of have been accepted in California. (See, for example, *McEvoy* v. *American Pool Corp.,* 32 Cal.2d 295, 298-299 [195 P.2d 783] ; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 219 ]157 P.2d 372, 158 A.L.R. 872].) Under these rules the fact that an intervening act of a third person is done in a negligent manner does not make it a superseding cause if a reasonable man knowing the situation existing when the act of the third person is done would not regard it as highly extraordinary that the third person so acted or the act is a normal response to a situation created by the defendant's conduct and the manner in which the intervening act is done is not extraordinarily negligent. (See Rest., Torts, § 447 ; *Stasulat* v. *Pacific Gas & Elec. Co.,* 8

Cal.2d 631, 637 [67 P.2d 678].) The fact that a third person does not perform his duty to protect the plaintiff from harm, either because he makes no effort or through his negligence does not succeed, is not a superseding cause. (Rest., Torts, § 452.)'' The current of authority in this jurisdiction has been uniformly to the same effect although the phrasing usually has been similar to that of BAJI instruction 104-C.2, hereinafter discussed. (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 218-219 [157 P.2d 372, 158 A.L.R. 872]; *Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 319 [282 P.2d 12]; *Davis* v. *Erickson*, 53 Cal.2d 860, 863 [3 Cal.Rptr. 567, 350 P.2d 535]; *Sabella* v. *Wisler*, 59 Cal.2d 21, 28 [27 Cal. Rptr. 689, 377 P.2d 889]; *Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 424-427 [218 P.2d 43]; *Parker* v. *City & County of San Francisco*, 158 Cal.App.2d 597, 605 [323 P.2d 108]; *Thornton* v. *Luce*, 209 Cal.App.2d 542, 548 [26 Cal. Rptr. 393]; *Yecny* v. *Eclipse Fuel Engineering Co.*, 210 Cal.App.2d 192, 198 [26 Cal.Rptr. 402].)

*Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499, 506 [111 P. 534, 139 Am.St.Rep. 134, 31 L.R.A. N.S. 559]: ''. . . the English as well as the American rule of decision is uniform to the effect that where an explosion of gas causing damage to a person results from the joint negligence of the gas company in discovering and repairing a leak in its pipes and of another in bringing a light in contact with the gas, whereby it explodes, a person damaged may recover from either or both at his election. Each is and both are the proximate cause of the injury.''

In my opinion the challenged instructions were not prejudicially erroneous.

I do not pause to spell out negligence on the part of the Gas Company for the majority opinion asserts and I assume that the evidence warranted such a finding.

In furtherance of its claim that negligence of Macco was an intervening or superseding cause of the accident defendant Gas Company requested[1] and the court gave a series of instructions upon the subject. Appellants complain principally of the giving of BAJI 104-C.2 which is set forth in the margin.[2] This instruction has been severely criticized in

---

[1] The original superior court file is before us pursuant to rule 12a of California Rules of Court.

[2] ¶ ''As you have been instructed, one of the questions we must decide in finding whether or not one person is liable for injury to another, is whether or not the conduct in question was a proximate cause of the injury in question. This inquiry may involve the conduct of two or more

*Werkman* v. *Howard Zink Corp., supra,* 97 Cal.App.2d 418, 423-427 and in dissenting opinion in *Vasquez* v. *Alameda,* 49 Cal.2d 674, 683 [321 P.2d 1]. In *Werkman* it is said that it is "not a correct statement of the law" (p. 425) and in the *Vasquez* dissent at page 684: "This instruction is riddled with error. It begins innocently enough to speak of the foreseeability of conduct that may combine with antecedent negligence to produce injury. It then lurches violently into what the actors actually did, thus stating the erroneous rule that the identical consequences must have been foreseeable as a probability. (*Werkman* v. *Howard Zink Corp.,* 97 Cal. App.2d 418, 425 [218 P.2d 43].) . . . The rule extends to foreseeable risks arising out of possible intervening conduct of third persons. Thus, in the present case, if Greenley was negligent in blocking the highway, it would be because a reasonably prudent man would foresee the risk of injury from the intervening conduct of other motorists. The occurrence of injury from intervening conduct that should have been foreseen, whether as a probability or as a possibility, would not insulate Greenley from liability. (*McEvoy* v. *American Pool Corp.,* 32 Cal.2d 295, 299 [195 P.2d 783] ; see Restatement, Torts, § 499.) "

As applied to the instant case, however, I perceive no prejudicial error in this instruction. It is difficult to follow and inclined to confuse a trained legal mind, but it is to be considered here in the light of the actually existing posture of the trial. Requested by defendant Gas Company, which alone was urging an intervening negligence of Macco, it would be understood by the jurors, if at all, as applying to the Gas Company and Macco respectively. If the words "Gas Company" be substituted for "first actor" and "Macco"

persons acting independently and at different times. To explain the problem presented by such a situation, I shall refer to the person whose conduct came first in point of time as the first actor and to the other person as the second actor. ¶"If the first actor foresaw, or by exercising ordinary care would have seen, that a second actor probably would conduct himself as the second actor actually did, and also that the combination of the first actor's conduct and the second actor's conduct probably would proximately cause injury to a third person, and if the combined conduct did so result, then each actor's conduct was a concurring proximate cause of that injury—although, of course, neither would be liable unless his conduct was negligent. ¶"But if the first actor's conduct alone did not cause the injury, and if a combination of results such as I have mentioned was not foreseen by him as a probability, and was not so foreseeable in the exercise of ordinary care, then the first actor may not be held liable for any injury of which the second actor's conduct was a proximate cause or which now may appear to have resulted from the combined conduct of both."

for ''second actor'' one begins to see real light as to what the court was telling the jury.

The second paragraph says: ''If the [Gas Company] foresaw, or by exercising ordinary care would have seen, that . . . [Macco] probably would conduct [itself] as . . . [Macco] actually did, and also that the combination of the [Gas Company's] conduct and . . . [Macco's] conduct probably would proximately cause injury to a third person, and if the combined conduct did so result, then each actor's conduct was a concurring proximate cause of that injury—although, of course, neither would be liable unless his conduct was negligent.'' At this point in our reading we have not yet reached intervening negligence. If it be (as we must assume) that this does require the ''first actor,'' the Gas Company, to ''foresee, or by the exercise of ordinary care . . . [to] have foreseen, the identical consequence that happened'' *(Werkman* v. *Howard Zink Corp., supra,* 97 Cal.App.2d 418, 425, *it merely follows that a greater burden of foresight has been placed upon the Gas Company than the law prescribes,* and that could not work any prejudice to appellants. It should be remembered that foreseeability is an essential element of negligence. ''It is an elementary principle that negligence is gauged by the ability to anticipate danger. '[R]easonable foresight of harm is essential to the concept of negligence, and supplies the criterion for determining whether it exists in a particular case, and reasonable foreseeability of harm is the fundamental basis of the law of negligence. . . . On the other hand, one is not bound to foresee every possible injury which might occur, or every possible eventuality, but only those which were reasonably foreseeable; and one is not required to anticipate against dangers which it is not his duty to avoid.' (65 C.J.S. § 5c(2)(a), pp. 354-359.). . . . 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.' '' *(Tucker* v. *Lombardo,* 47 Cal.2d 457, 464, 465 [303 P.2d 1041].) (See also *Campbell* v. *Magana,* 184 Cal.App.2d 751, 762 [8 Cal.Rptr. 32]; *Mertes* v. *Atchison, T. & S.F. Ry. Co.,* 206 Cal.App.2d 64, 70 [23 Cal. Rptr. 320]; 35 Cal.Jur.2d, § 38, p. 528.)

The last paragraph of the instruction, so far as I can see, does not suffer from the same defect as the second. The ''combination of results such as I have mentioned'' refers to the phrase in paragraph 2 ''would proximately cause injury to a third person''; this is sufficiently general to avoid the

label of foreseeing "the identical consequence that happened."

Instruction 104-C (Revised),[3] given at Emsco's request, serves to clarify 104-C.2 just discussed and to place the matter clearly upon a sound basis. I am unable to agree with appellants' contention that these two instructions "virtually directed the jury to return a defense verdict."

Appellants further claim error in giving a series of instructions predicated upon failure of Macco to observe safety precautions required of it by law. They are set forth at pages 3-7 of Appendix to Opening Brief and state the substance of safety orders promulgated in title 8 of the Administrative Code, such as an employer's duty to inaugurate and maintain an accident prevention program, including inspections of working places and equipment, noting violations of safe practices and safety orders; forbidding any worker being required to work in an unsafe place unless for the purpose of making it safe and then only after proper precautions being taken to protect him while doing such work; controlling flammable vapors so as to avoid hazard to workers; forbidding the employer to permit upon or in any place of work any source of ignition of flammable gases or vapors where the concentration thereof may reasonably be expected to exceed 20 per cent of the lower explosive limit in the working atmosphere; requiring frequent tests to see that that limit is not exceeded; providing: "9d) Smoking shall be forbidden in any location where flammable vapors in concentrations greater than 20 per cent of the lower explosive limit may reasonably be expected."

Following these informative instructions BAJI 149, slightly modified, was given stating the violation of such safety orders to be negligence in the same manner and to the same extent as violation of a statute or ordinance.

These instructions were requested by the Gas Company in furtherance of its claim that Macco had violated these regulations and that that constitutes negligence of a superseding nature if Gas Company should be found negligent. That

---

[3] ¶ "Where a defendant is negligent but the immediate cause of injury to the plaintiff is the conduct of a third person, said defendant is not liable for such injury unless such intervening conduct is something which he foresaw or in the exercise of reasonable care should have foreseen would, cooperating with a condition created by defendant's own negligence, probably result in injury to another. The reason for this is that if defendant foresaw or in the exercise of ordinary care should have foreseen said result, his negligence continued and operated as a proximate concurring cause of the injury."

question is one of fact (*Mosley* v. *Arden Farms Co., supra,* 26 Cal.2d 213, 219; *Warner* v. *Santa Catalina Island Co., supra,* 44 Cal.2d 310, 319). It is not asserted that there was no substantial evidence to support respondent's position on that issue, and hence it was entitled to an instruction upon it. (*Davis* v. *Erickson, supra,* 53 Cal.2d 860, 863.)

Finally, appellants urge that it was erroneous for the court to give BAJI 138.2 in slightly modified form, to the effect that one who is himself exercising ordinary care may assume that other persons will do likewise. Of course this is a familiar and proper instruction and I do not see that it has any improper bearing upon the question of whether Macco's alleged negligence was a superseding cause of Mr. Ewart's death.

Appellants' argument that the evidence is sufficient to support a finding that Emsco was negligent and its negligence a proximate cause of death cannot be sustained. That contention is merely an indirect claim that the evidence is insufficient to support the verdict exonerating said defendant of negligence. "Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].) This entails the further burden of setting forth in appellants' brief "all material evidence upon the point, not merely his own proofs . . . ; if this is not done the point is deemed waived. . . ." (*Davis* v. *Lucas,* 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479].) Appellants have not borne this burden with respect to respondent Emsco.

The judgment should be affirmed.

The petitions for a rehearing were denied October 14, 1965. Ashburn, J.,* was of the opinion that the petition should be granted. Respondents' petitions for a hearing by the Supreme Court were denied November 16, 1965.

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.